IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

**KASII ODGERS**, 

        Plaintiff,

vs.

**IPC INTERNATIONAL CORPORATION**,
an Illinois corporation,

        Defendant.

Civil Case No. 10-177-KI

OPINION AND ORDER

    Beth Creighton
    J. Ashlee Albies
    Creighton & Rose, P.C.
    500 Yamhill Plaza Building
    815 SW Second Avenue
    Portland, Oregon  97204

        Attorneys for Plaintiff

    Scott Oborne
    Mark Crabtree

Page 1 - OPINION AND ORDER

>Jackson Lewis, LLP
>1001 SW 5th Avenue, Suite 1205
>Portland, Oregon  97204
>
>>Attorneys for Defendant

KING, Judge:

Plaintiff Kasii Odgers brings suit against defendant IPC related to IPC's treatment of her during her employment, and its eventual termination of her employment.  Pending before me are plaintiff's Motion to Strike (#44) and IPC's Motion for Summary Judgment or Alternative Motion for Partial Summary Judgment (#32).  For the foregoing reasons, I grant both motions.

## BACKGROUND

Plaintiff asserts the following claims: (1) unlawful retaliation in violation of ORS 659A.030; and (2) discrimination for filing a workers' compensation claim under ORS 659A.040.  She alleges IPC retaliated against her for complaining about sexual harassment and sex discrimination in the workplace, and for filing a workers' compensation claim.

Plaintiff worked for IPC as a security guard at the Jantzen Beach SuperCenter from November 6, 2005 to December 2, 2008.  IPC reviewed plaintiff's performance during these years as "meets expectations" and "exceeds expectations."  Pl.'s Ex. 1-4.

Thomas Hanson, Director of Security, supervised plaintiff.  In 2008, plaintiff complained to Hanson about sex harassment by an employee of a mall vendor and, when Hanson did not address the issue, she informed Kirk Barnett, the regional manager for IPC.  She also complained to Barnett about lack of overtime and that IPC gave some employees better shifts than it assigned her.  Several weeks later, Odgers complained again to Barnett, writing that schedule "changes are being made for the two purposes of punishing me and attempting to force me to leave Jantzen Beach, if not IPC (using hostile work environments to force out

'undesirable' officers is a tactic that I feel Capt. Hanson has used repeatedly in the 2 ½ years I have been with IPC)." Pl.'s Ex. 10.

A new employee, Adam Ray, began working for IPC at the end of August of 2008. Plaintiff repeatedly complained to Hanson about his harassing behavior. (E.g. hitting female employees on the buttocks, calling them "sweetie" and "honey," sending sexually explicit and unwelcome text messages, and asking inappropriate questions about plaintiff's sexual preferences). After Hanson spoke with Ray, plaintiff sent a letter to Hanson on October 21[1] informing him that Ray's conduct had "noticeably improved." Hanson Decl. Ex. C. Nevertheless, plaintiff complained to Hanson that Ray was acting unprofessionally with staff members of Scream at the Beach, a Halloween vendor at the mall. She also described what she perceived as a "'boys vs. girls' atmosphere . . . developing[.]" Id.

Hanson wrote a reprimand for plaintiff's tardiness to work on October 28. She was more than three hours late. Plaintiff was returning from Eastern Washington where she had been caring for her mother who had just had surgery. Hanson knew that she had been caring for her mother. She called in three hours before her scheduled shift and explained to a co-worker that she would be late due to her trip and a stomach virus. The reprimand reflects that she told the co-worker she would be one to one and a half hours late. Hanson later testified it was "totally acceptable" to be late for a family emergency. Pl.'s Ex. 27, Hanson Dep. 80-81, Sept. 14, 2010 (hereinafter, "Hanson Dep."). Before she made the complaints about sexual harassment, Hanson had never reprimanded plaintiff for being late.

The Jantzen Beach SuperCenter was managed by Madison Marquette Retail Services, Inc. The contract between IPC and Jantzen Beach SuperCenter provides that if an employee is

---

[1] All relevant events occurred in the year 2008.

Page 3 - OPINION AND ORDER

"for any reason . . . unsatisfactory" to Jantzen Beach, IPC "shall remove said employee" upon written notice to IPC. Barnett Decl. Ex B ¶ IV. On November 15, 2008, Michelle Freeman (now Michelle Adams), the General Manager for Madison at the Jantzen Beach Mall, saw plaintiff sitting with her boyfriend in the "Santa Chair." Freeman complained to Barnett the next day, after having previously complained to Hanson about plaintiff for other reasons, saying it was time "to transfer Kasii." Crabtree Decl. Ex. A, Adams Dep. 9:16-19, 10:2-4, Sept. 17, 2010 (hereinafter, "Adams Dep."); see also Barnett Decl. ¶ 6. Freeman testified that Barnett asked her to write a letter.

Plaintiff injured herself on November 20 while attempting to stop and arrest a shoplifter. She called Hanson and told him her neck and hip hurt as a result of her altercation with the perpetrator. As he had done once before, according to plaintiff, Hanson told her not to go to the doctor because Jantzen Beach had an "accident free" record. Also, according to plaintiff, IPC had an incentive program, allowing the workplace to enter a drawing to win bonuses if the workplace was free of injury for a year.[2]

As required by IPC policy, plaintiff completed a report about the incident with the shoplifter on November 21. Hanson "read through it on the 21st" and she worked on it a little more. Crabtree Decl. Ex. B, Odgers Dep. 176:9-13, May 25, 2010 (hereinafter, "Odgers Dep.").[3] On November 25, Hanson requested plaintiff make changes to it (make the narrative "flow smoothly") and re-submit it the next day. Pl.'s Ex. 15, at 2. She does not recall exactly, but she thinks she worked on it a little more and that Hanson might have asked her to work on it again.

---

[2]Hanson's testimony, and the testimony of another employee, indicates that the bonus was only for being vehicle accident-free, not injury accident-free. Pl.'s Ex. 26, Cleveland Dep. 13:17-19, Sept. 15, 2010; Hanson Dep. 153:1-4.

[3]The deposition contains multiple page numbers and some typeover on the original page numbers. This deposition page is also designated as Crabtree Decl. Ex. B, at 41.

Page 4 - OPINION AND ORDER

She testifies in her declaration that she planned on working on it during her next shift on November 27.

On November 25, as requested by Barnett, Freeman followed up her telephone call with a letter to IPC complaining about plaintiff's conduct with her boyfriend, writing she was "extremely concerned with [plaintiff's] recent disregard and insubordination of her duties, co-workers and superiors. In the last few months, I have noticed changes in [plaintiff's] overall performance which concerns me of the life safety of my customers when she is on duty." Barnett Decl. Ex. C.

On November 25, plaintiff told Hanson she still hurt from the incident with the shoplifter and asked for the workers' compensation paperwork. He snapped at her, "Fine! Go get the forms and I will sign them." Odgers Decl. ¶ 16. Plaintiff filed a workers' compensation claim.

Plaintiff had November 25 and 26 off from work, but when she returned on the 27th, she met with Hanson for about two and a half hours. Hanson explained that management wanted her removed from the Jantzen Beach Mall. At Barnett's instruction, Hanson issued plaintiff a written reprimand for her conduct with her boyfriend. Hanson also presented a reprimand dated November 25 for not fixing her November 21 incident report. IPC policy required that incident reports be submitted "as soon as possible following an incident or accident, no later than the termination of the Officer's shift on the day of the occurrence." Barnett Decl. Ex. A.

Hanson testifies in his declaration that, after being told she could no longer work at Jantzen Beach, plaintiff "responded that she would not transfer unless IPC helped pay for her moving expenses." Hanson Decl. ¶ 15. This statement is the subject of plaintiff's motion to strike, discussed below. Instead, according to both Hanson's deposition testimony, and plaintiff's declaration, Hanson told plaintiff she had until Saturday to decide if she wanted to transfer to either Northern California or Wenatchee, Washington. Hanson testified that he never

Page 5 - OPINION AND ORDER

told plaintiff she would be terminated if she did not accept the transfer. He testified, "I never mentioned termination in the whole conversation on the 27th. I just said that the general manager doesn't want you working at this property but IPC is willing to transfer you to any property you want. And then she asked me if she could go to eastern Washington if they paid and I said, well, I can ask but I don't know." Hanson Dep. 197:9-14.

Plaintiff testifies in her declaration, "If IPC was not willing to pay for the moving costs, I would figure out another way to cover them." Odgers Decl. ¶ 20. She also testifies in her declaration, "I never refused to transfer and I would have taken the transfer if I had been told that the alternative was to be fired." Id. ¶ 22. In her deposition, she said she called Hanson later on the 27th and explained, in response to his suggestion about transferring, "I would transfer, but on the amount of money that I was being paid, I could not pay for the move, so IPC would have to help me cover those costs." Odgers Dep. 180:17-19.

In a November 28 email to Barnett, plaintiff explains at length what happened in her meeting with Hanson on November 27. She says, "At the end of the interview, I was told I needed to either transfer or resign. There is no other IPC property within 200 miles and I will not resign." Pl.'s Ex. 21, at 4.

On November 28, Hanson told IPC's HR department that plaintiff would not transfer unless IPC helped pay for her move. Plaintiff was suspended pending review. On November 30, plaintiff wrote Barnett she "would not resign" and "a transfer is a practical impossibility." Barnett Decl. Ex. D.

IPC's Executive Vice President and General Counsel, Michael Crane, made the decision to terminate plaintiff's employment. He had no knowledge about the workers' compensation claim or any of plaintiff's other complaints. The termination was effective December 2, 2008.

## LEGAL STANDARDS

Page 6 - OPINION AND ORDER

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). The initial burden is on the moving party to point out the absence of any genuine issue of material fact. Once the initial burden is satisfied, the burden shifts to the opponent to demonstrate through the production of probative evidence that there remains an issue of fact to be tried. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). On a motion for summary judgment, the evidence is viewed in the light most favorable to the nonmoving party. Universal Health Services, Inc. v. Thompson, 363 F.3d 1013, 1019 (9th Cir. 2004).

**MOTION TO STRIKE**

Plaintiff contends that a statement in Hanson's declaration contradicts his sworn deposition testimony.

In his declaration, Hanson states:

> On November 27, 2008, I met with Ms. Odgers before the start of her shift. During that meeting, I gave Ms. Odgers the two written reprimands discussed above [related to Freeman's complaint and completing the incident report]. I also told Ms. Odgers that Jantzen Beach SuperCenter management had asked that she be removed from the property. I informed Ms. Odgers that she had an opportunity to transfer to another location. <u>Ms. Odgers responded that she would not transfer unless IPC helped pay for her moving expenses.</u>

Hanson Decl. ¶ 15. It is the underlined portion of the testimony that plaintiff moves to strike.

In his deposition, Hanson testifies as follows:

A. I remember she wanted to ask if she could go to the Wenatchee area I think, an IPC property up there.

Q. Any other questions?

A. She wanted to know if IPC would pay for her move up there.

Q. And did you respond to the question whether she could move to the Wenatchee area?

A. I said I could call and check. I'm not too sure. It's above my position.

Page 7 - OPINION AND ORDER

> Q. Did you do that?
>
> A. I did.
>
> Q. In that meeting?
>
> A. No. I called Friday I think it was, called and asked.
>
> Q. Okay.
>
> A. And it was a no, they wouldn't pay for the move.
>
> . . .
>
> Q. Did you tell her not to come back to work?
>
> A. No, because during our conversation there was a discussion of she could have until Saturday to think about if she would like a transfer. So there was 48 hours given to her to see if she would like to –
>
> Q. When was the next time you had contact with anyone regarding the transfer of Ms. [Odgers] after your November 27th meeting with Ms. [Odgers]?
>
> . . .
>
> A. The next part that happened was on November 27th about 12:30 I received a call from Officer [Odgers] on my telephone answering service that stated that she would not take the transfer, that she wasn't leaving Jantzen Beach, and Kirk and Melissa and myself would just have to deal with it but she's coming back to work.
>
> Q. And what happened after that regarding a transfer or Ms. [Odger's] employment?
>
> A. Well, then I just kind of pretty much understood that she wasn't going to take the transfer. So then Friday she was scheduled to work, she didn't show, and I contacted Kirk Barnett because it was a holiday weekend.
>
> Q. Why did you contact Kirk Barnett?
>
> A. To inform him that Officer [Odgers] did not want the transfer. She would not take a transfer. She wanted to be at Jantzen Beach.

Hanson Dep. 34-35; 38-39:2.

In contrast to the statement Hanson made in his declaration, at no point during their in-person meeting did plaintiff refuse a transfer unless IPC paid for moving expenses. The

Page 8 - OPINION AND ORDER

statement should be stricken from the declaration. I rely instead on the deposition testimony and other record evidence submitted in support of the briefing.

## DISCUSSION

Plaintiff's first claim for relief is that IPC unlawfully retaliated against her in violation of ORS 659A.030.

ORS 659A.030(1)(f) provides:

> It is an unlawful employment practice: . . . (f) For any person to discharge, expel or otherwise discriminate against any other person because that other person has opposed any unlawful practice, or because that other person has filed a complaint, testified or assisted in any proceeding under this chapter or has attempted to do so.

Plaintiff's second claim for relief is that, under ORS 659A.040, IPC retaliated against her for filing a workers' compensation claim.

To establish a retaliation claim, a plaintiff must establish a *prima facie* case by establishing the following factors: (1) that she was engaging in a protected activity, (2) that she suffered an adverse employment decision, and (3) that there was a causal link between her activity and the employment decision. Trent v. Valley Elec. Ass'n Inc., 41 F.3d 524, 526 (9th Cir. 1994) (retaliation for complaining about sexual harassment); Kirkwood v. Western Hyway Oil Co., 204 Or. App. 287, 129 P.3d 726, 729 (2006) (retaliation for filing a workers' compensation claim).

Once plaintiff has established a *prima facie* case, the burden of production shifts to the defendant to rebut the presumption of discrimination by articulating some permissible reason for the adverse action. Wallis v. J.R. Simplot Co., 26 F.3d 885, 889 (9th Cir. 1994). The burden then shifts to the plaintiff to show that the defendant's reason is a pretext for another motive which is discriminatory. Id. Under federal standards, to avoid summary judgment, the plaintiff must produce "specific, substantial evidence of pretext" in response to defendant's evidence of

Page 9 - OPINION AND ORDER

nondiscriminatory reasons. Id. at 890 (citation omitted). "When evidence to refute the defendant's legitimate explanation is totally lacking, summary judgment is appropriate even though plaintiff may have established a minimal *prima facie* case based on a McDonnell Douglas type presumption." Id. at 890-91.

Plaintiff has demonstrated that she engaged in protected activity, namely complaining about sex harassment and filing a workers' compensation claim. Trent, 41 F.3d at 526. She also suffered several adverse employment actions, which I address separately in turn below, including her termination, schedule changes, and three written reprimands.

I.       Termination

There is no dispute plaintiff's termination constitutes an adverse employment action. "To show the requisite causal link, the plaintiff must present evidence sufficient to raise the inference that her protected activity was the likely reason for the adverse action." Cohen v. Fred Meyer, Inc., 686 F.2d 793, 796 (9th Cir. 1982). The causal link between the protected action and the termination can be inferred from circumstantial evidence, such as the proximity in time between the protected activity and the retaliatory employment decision. Yartzoff v. Thomas, 809 F.2d 1371, 1376 (9th Cir. 1987) (holding that a two-to-three-month delay was not too long to establish a causal link sufficient to withstand summary judgment and citing with approval Hochstadt v. Worcester Found. for Experimental Biology, Inc., 425 F. Supp. 318, 324-25 (D. Mass.), aff'd, 545 F.2d 222 (1st Cir. 1976), which held that a six-month delay could satisfy the causation requirement).

Plaintiff faces a two-part problem in showing IPC terminated her because of her protected activity. First, Crane, the IPC employee who made the decision to terminate plaintiff, had no information regarding plaintiff's complaints of discrimination or her workers' compensation claim. Although Crane was purportedly in charge of overseeing harassment and

Page 10 - OPINION AND ORDER

discrimination investigations, there is no evidence he was involved with resolving any of plaintiff's complaints. Barnett's e-mail to Crane saying only that plaintiff had "been a pain for some time now" simply does not show that Crane knew about plaintiff's protected activity.

Even if I assume Crane did know about plaintiff's protected activity, however, it was Freeman who asked that plaintiff be removed from the Jantzen Beach location. Plaintiff admits that Freeman had no involvement or knowledge about plaintiff's protected activity. Furthermore, plaintiff filed her workers' compensation claim after Freeman requested plaintiff be removed from the Jantzen Beach property. Given Freeman's request that plaintiff be removed from the Jantzen Beach location, IPC had one option left to it and that was to offer plaintiff a transfer to another location. It did that and the evidence in the record reflects that plaintiff rejected the offer, as I explain in detail below.

Plaintiff relies on Poland v. Chertoff, which recognizes that when a biased subordinate gives information to an unbiased decisionmaker that results in an adverse employment action, the motivations of the biased person can be imputed to the decisionmaker. 494 F.3d 1174, 1182 (9th Cir. 2007). Here, plaintiff argues, Hanson provided false information to Crane that plaintiff refused a transfer unless IPC would pay for it. According to plaintiff, what she actually said was that she would accept the transfer, but wondered if IPC would pay for it. She says she never refused the transfer, and she was never told her only other option was termination. Crane, then, relied on Hanson's statement, which plaintiff characterizes as a false statement, in deciding to terminate her. According to plaintiff, a factual issue remains as to whether Hanson's misleading information influenced Crane's decision to terminate.

Plaintiff's theory, however, is based on the unsupported assertion that Hanson actually gave false information to Crane. Even assuming Hanson had a retaliatory motive, plaintiff herself testified that she told Hanson IPC "would have to help me cover" the costs associated

Page 11 - OPINION AND ORDER

with a transfer. Odgers Dep. 180:17-19. She further informed Barnett in an e-mail that she understood her two options were to either "transfer or resign. There is no other IPC property within 200 miles and I will not resign." Pl.'s Ex. 21, at 4. She repeated this message to Barnett in a follow-up e-mail, indicating she "would not resign" and "a transfer is a practical impossibility." Barnett Decl. Ex. D. IPC has never paid for employee transfers and would not pay for plaintiff's. Plaintiff's own words, which she wrote contemporaneous to the events at issue here, reflect that she rejected IPC's offer to transfer to another location, knowing the only other option from IPC's perspective was to terminate her employment. There is no evidence that plaintiff's protected activity was the likely reason for her termination. As a result, she has failed to meet her burden on the *prima facie* case.

Alternatively, even if plaintiff established causation, there is an utter lack of "specific, substantial evidence of pretext" in response to IPC's assertion that it terminated plaintiff because its client did not want her on the Jantzen Beach property and that it relied on plaintiff's statements that a transfer was a "practical impossibility." See Wallis at 890; Barnett Decl. Ex. D. No reasonable jury could find that plaintiff's termination was in retaliation for her protected conduct. Consequently, plaintiff's retaliation claims predicated on her termination must be dismissed.

II.     Other Alleged Adverse Employment Actions

Plaintiff alleges IPC gave her a "less desirable work schedule" and issued three false written reprimands in retaliation for her protected activity. Compl. ¶ 4.A. The first written reprimand, issued on October 28, was to rebuke plaintiff for her tardiness. The second written reprimand, issued on November 27, was a warning for plaintiff's failure to timely complete an incident report. The third written reprimand, also issued on November 27, was to document plaintiff's behavior with her boyfriend in the "Santa Chair."

Page 12 - OPINION AND ORDER

Plaintiff's claims must be based on events that occurred within one year or less of when the challenged action occurred. ORS 659A.875. Plaintiff filed her Complaint on November 25, 2009, so any challenged act must have taken place after November 25, 2008. IPC presented evidence that the one-year statute of limitations had expired for any challenge to any schedule changes and to the first written reprimand issued on October 28. Plaintiff failed to rebut the evidence or argument that these challenged events occurred outside of the statute of limitations.

With respect to the third reprimand, the evidence reflects Hanson issued the reprimand at Barnett's instruction to address plaintiff's conduct with her boyfriend. Plaintiff argues that the fact that she was written up only seven days after she was injured and two days after she filed her workers' compensation claim is sufficient to link the written reprimand to her protected activity. She also suggests it is "suspicious" that Hanson waited to write her up for the conduct rather than reprimand her immediately after the event.

As an initial matter, Hanson did not wait twelve days to write up the reprimand. The evidence reflects that Freeman wrote the letter complaining about plaintiff's conduct on November 25 and, after Barnett received the letter, he directed Hanson to prepare the reprimand. Hanson signed and dated the reprimand on November 25. Even granting plaintiff the inference that the timing is sufficient for her to establish her *prima facie* case as to causation, plaintiff cannot rebut IPC's legitimate explanation that it needed to address conduct about which its client had complained. Plaintiff offers only the timing as evidence to rebut IPC's explanation, and that is simply not "specific, substantial evidence of pretext." Wallis, 26 F.3d at 890.

The second reprimand arose from an allegedly incomplete incident report. Looking at the facts in the light most favorable to plaintiff, the facts are as follows: plaintiff had an altercation with a shoplifter on November 20; plaintiff completed an incident report on November 21; plaintiff thinks Hanson "read through it on the 21st" and she worked on it a little

Page 13 - OPINION AND ORDER

bit more, Odgers Dep. 176: 9-13; on November 25, when plaintiff came in to talk about her injury, Hanson requested that plaintiff make the report flow more smoothly and add a medical supplement report; plaintiff responded that she had filled out a medical supplement report and Hanson told her not to worry about that part; plaintiff planned to polish the report on November 27 since she was not scheduled to work on November 25 and 26; Hanson presented the reprimand to plaintiff on November 27. IPC requires officers to complete incident reports "as soon as possible following an incident or accident, no later than the termination of the Officer's shift on the day of the occurrence." Barnett Decl. Ex. A.

Plaintiff contends the reprimand itemizes a policy violation of which she is not guilty, that Hanson wanted her to correct her report on her day off, and that other employees were given extensions to work on their reports. IPC points out that the record reflects the reprimand was for failure to correct an incident report, which is apparent from the text of the reprimand, but that Hanson simply cited the wrong page number of the policy manual. Additionally, plaintiff's own testimony indicates Hanson asked her to work on the report on the 21st. Other employees were punished for failing to complete incident reports in a timely manner. Hanson Decl. Ex. F. Finally, there is no indication plaintiff requested an extension of time; to the contrary, in response to the reprimand, she wrote, "I had the incident well documented and since it was only touch up corrections, I felt it could wait," directly contravening her supervisor's request. Hanson Decl. Ex. E. Plaintiff has failed to show IPC's rationale for issuing this written reprimand is pretextual. At best, the evidence shows plaintiff disagreed with Hanson's view of the urgency of the matter.

Since plaintiff's challenge to the schedule changes and the first written reprimand are time-barred, her retaliation claims predicated on these events are dismissed. Additionally, since plaintiff is unable to rebut IPC's legitimate reason for issuing written reprimands for the

Page 14 - OPINION AND ORDER

incomplete incident report and plaintiff's conduct with her boyfriend, plaintiff's remaining retaliation claims must also be dismissed.

## CONCLUSION

For the foregoing reasons, I grant plaintiff's Motion to Strike (#44) and grant IPC's Motion for Summary Judgment (#32).  This case is dismissed.

IT IS SO ORDERED.

Dated this        14th         day of February, 2011.


                                                     /s/ Garr M. King
                                                    Garr M. King
                                                    United States District Judge